IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KALVIN DRUMMOND, et al., | : | |
| on behalf of himself and others | : | CIVIL ACTION |
| similarly situated, | : | |
|     Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| HERR FOODS INC., et al., | : | No. 13-5991 |
|     Defendants. | : | |

**MEMORANDUM**

**Schiller, J.**                                                                                                                  **October 21, 2014**

Kalvin Drummond was a route salesperson for Herr Foods Inc. ("Herr's"), a manufacturer and distributor of snack foods. According to Plaintiffs, Herr's violated the Fair Labor Standards Act ("FLSA"), the Pennsylvania Minimum Wage Act, and the Pennsylvania Wage Payment and Collection Law when Herr's failed to pay overtime to its route salespersons. The lawsuit is brought as a collective and class action. According to Herr's, FLSA's outside sales exemption applies, and therefore it is not obligated to pay overtime to route salespersons. Herr's has filed an amended motion for summary judgment and argues that the FLSA claim of Jacqueline Jones, a former route salesperson who is a putative collective and class action member, should be dismissed based on the outside sales exemption. It is undisputed that Jones, as a route salesperson, sold Herr's products. The key question, however, is whether Jones's "primary duty" was sales. The Court holds that a jury must decide that question and, accordingly, denies Herr's motion.

**I.     FACTUAL BACKGROUND**

According to the job description from Herr's, the job title of route salesperson was in the

sales department. (Herr's Am. Mot. for Summ. J. Ex. C [Job Description].) A summary of the position provided that a route salesperson "[s]afely drives route truck over assigned route to sell, deliver, and merchandise products, as well as provide excellent customer service to a variety of grocery, mass merchandise, and independent chain stores." (*Id.*) According to Herr's, the essential duties of the position included:

- selling, delivering, stocking and merchandising Herr's brand snack foods to grocery retail and independent chain stores;
- rotating and providing credit to accounts for stale or damaged items;
- increasing current customer sales volume through building relationships with key decision makers, asking about customer needs, and communicating product knowledge;
- increasing the customer base by soliciting new accounts;
- executing company sponsored programs;
- processing orders;
- collecting cash from customers and processing invoices;
- safely operating a step-van delivery truck;
- conducting pre-trip safety inspections; and
- managing daily accuracy of product inventory.

(*Id.*) The description stated that route salespersons should demonstrate competency in customer service, interpersonal skills, oral and written communication, teamwork, cost consciousness, ethics, professionalism, quality, safety and security, and attendance and punctuality. (*Id.*) The job required a high school diploma or GED, as well as one to two years of recent, relevant related experience

and/or training. (*Id*.) The experience and/or training requirement could be satisfied through "prior sales, retail, or customer service related experience." (*Id*.)

Herr's hired Jones as a route salesperson in 2007; she was based out of the South Philadelphia branch. (Mem. of Law in Supp. of Def. Herr Foods' Am. Mot. for Summ. J. With Regard to the FLSA Claim of Jones [Herr's Mem.] at 2.) Jones received training on sales techniques and Herr's products so that she could effectively sell products to customers. (*Id*. at 3.) She also received Herr's Route Sales Training Orientation Book. (Herr's Am. Mot. for Summ. J. Ex. A [Jones Dep.] at 47-48.) The training orientation book covered a number of topics, including an introduction to the company and the route salesperson position, safe driving, and managing route and load requirements. (*Id*. Ex. E [Route Sales Training Orientation Book].) The Route Sales Training Orientation Book took the reader through a call to a customer and noted that "[o]ne of the most important principles of successful selling is using time effectively. The more time you can free up to do those things that generate extra sales, the more successful you will be as a Route Salesperson." (*Id*.) Herr's referred to the route salesperson as "a unique individual" because of "the reliance the company has on the selling success of the Route Salesperson." (*Id*.) Herr's noted that "[i]n our system, our Route Salespeople must be salespeople, not delivery people." (*Id*.) The route salespeople are informed that "[i]n order to move forward in the future, our Route Salespeople must stay 'Focused on Selling' to seize sales opportunities day in and day out." (*Id*.) The Route Sales Training Orientation Book also offered tips and suggestions for making a first impression, talking with customers, and matching resources to opportunities. (*Id*.)

During her deposition, Jones testified that Herr's had quarterly sales meetings to discuss new products, promotions and customers, as well as safety issues. (Jones Dep. at 52-53.) On certain days,

Jones's manager accompanied her on her route and critiqued her on a number of issues, including safety, sales/selling, cost/waste/expense control, "truck," "route book," and "salesperson." (Herr's Am. Mot. for Summ. J. Ex. H [Coaching Playbook].) The sales/selling category is broken down into further categories, including execution of current promotions, route planning, new product execution, and new accounts/solicitations. (*Id.*)

Jones's manger, Patrick Sifer, also evaluated Jones on a number of competencies, including her safety record, non-franchise sales, returns, new accounts, attendance, and attitude. (*Id.* Ex. I [2009 Performance Appraisal].) Her 2009 appraisal noted that Jones completed her first year of safe driving. (*Id.*) Sifer praised Jones for her non-franchise sales growth, as well as her "commitment to consistently grow [her] sales and [her] route on a weekly basis." (*Id.*) According to the evaluation, Jones had picked up fifteen new accounts, and she was given a goal of seven new accounts for the upcoming year. (*Id.*) Her 2011 appraisal discussed similar topics, and included numerous sales-related comments. (*Id.* Ex. J [2011 Performance Appraisal].)

Jones would sometimes decide the amount of product to order and at other times she would would work with the customer to decide the amount of product to order. (Herr's Mem. at 9.) Jones consulted with her customers to suggest products and to select particular products and/or displays that would be successful in each store. (*Id.*) Jones tried—and sometimes succeeded—in persuading customers to buy new products and in increasing purchases of existing products. (Jones Dep. at 128.)

The branch where Jones worked offered sales incentives to reward top performing route salespersons, and Jones competed against other route salespersons to generate additional sales in order to receive additional compensation and benefits. (Herr's Mem. at 11.) As part of her duties, Jones also actively targeted prospective customers to convince them to carry Herr's products. (*Id.*)

4

Herr's employed tractor trailer drivers who have no selling responsibilities. (Rock Dep. at 109.) These individuals deliver product from the main plant to a branch and do not deliver product to retail outlets. (*Id*. at 110.) Herr's also employs bin delivery drivers who deliver product to satellite storage units. (*Id*. at 111.)

**II.   STANDARD OF REVIEW**

Summary judgment is appropriate when the admissible evidence fails to demonstrate a genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). When the movant does not bear the burden of persuasion at trial, it may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

Thereafter, the nonmoving party demonstrates a genuine issue of material fact if it provides evidence sufficient to allow a reasonable finder of fact to find in its favor at trial. *Anderson*, 477 U.S. at 248. In reviewing the record, a court "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Prowel v. Wise Bus. Forms*, 32 F.3d 768, 777 (3d Cir. 2009). The court may not, however, make credibility determinations or weigh the evidence in considering motions for summary judgment. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).

### III. DISCUSSION

#### A. FLSA and the Outside Sales Exemption Regulations

FLSA requires that employers pay their employees overtime for a workweek longer than forty hours. Specifically,

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). The law exempts a number of employees from the overtime requirement, including those "in the capacity of outside salesman." *Id*. § 213(a)(1). Congress did not define the term "outside salesman," but in 2004, the Department of Labor issued regulations implementing the outside sales exemption. Pursuant to the regulations, an "employee employed in the capacity of outside salesman" means any employee "[w]hose primary duty is: (I) making sales within the meaning of section 3(k) of the Act, or (ii) obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and (2) Who is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty." 29 C.F.R. § 541.500. The term 'primary duty' means:

> [T]he principal, main, major or most important duty that the employee performs. Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole. Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

29 C.F.R. § 541.700(a).

> The regulations note that:
>
> The amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee. Thus, employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement. Time alone, however, is not the sole test, and nothing in this section requires that exempt employees spend more than 50 percent of their time performing exempt work. Employees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion.

29 C.F.R. § 541.700(b).

> The regulations also provide guidance on how to apply the exemption to "drivers who sell":
>
> (a) Drivers who deliver products and also sell such products may qualify as exempt outside sales employees only if the employee has a primary duty of making sales. In determining the primary duty of drivers who sell, work performed incidental to and in conjunction with the employee's own outside sales or solicitations, including loading, driving or delivering products, shall be regarded as exempt outside sales work.
>
> (b) Several factors should be considered in determining if a driver has a primary duty of making sales, including, but not limited to: a comparison of the driver's duties with those of other employees engaged as truck drivers and as salespersons; possession of a selling or solicitor's license when such license is required by law or ordinances; presence or absence of customary or contractual arrangements concerning amounts of products to be delivered; description of the employee's occupation in collective bargaining agreements; the employer's specifications as to qualifications for hiring; sales training; attendance at sales conferences; method of payment; and proportion of earnings directly attributable to sales.

*Id*. § 541.504(a)-(b).

The regulations also offer examples of drivers who may qualify as exempt outside sales employees, including, "[a] driver who provides the only sales contact between the employer and the customers visited, who calls on customers and takes orders for products, who delivers products from

stock in the employee's vehicle or procures and delivers the product to the customer on a later trip, and who receives compensation commensurate with the volume of products sold;" as well as "[a] driver who obtains or solicits orders for the employer's products from persons who have authority to commit the customer for purchases;" and "[a] driver who calls on new prospects for customers along the employee's route and attempts to convince them of the desirability of accepting regular delivery of goods;" and "[a] driver who calls on established customers along the route and persuades regular customers to accept delivery of increased amounts of goods or of new products, even though the initial sale or agreement for delivery was made by someone else." *Id*. § 541.504(c)(1)-(4). On the other hand, drivers who generally would not qualify as exempt outside sales employees include "[a] driver who often calls on established customers day after day or week after week, delivering a quantity of the employer's products at each call when the sale was not significantly affected by solicitations of the customer by the delivering driver or the amount of the sale is determined by the volume of the customer's sales since the previous delivery;" as well as "[a] driver primarily engaged in making deliveries to customers and performing activities intended to promote sales by customers (including placing point-of-sale and other advertising materials, price stamping commodities, arranging merchandise on shelves, in coolers or in cabinets, rotating stock according to date, and cleaning and otherwise servicing display cases), unless such work is in furtherance of the driver's own sales efforts." *Id*. § 541.504(d)(2)-(3).

### B. Cases

Whether an employee works in the "capacity of outside salesman" demands "a functional, rather than a formal inquiry, one that views an employee's responsibilities in the context of the particular industry in which the employee works." *Christopher v. SmithKline Beecham Corp.*, 132

S. Ct. 2156, 2170 (2012). The burden rests with the employer to establish the applicability of the exemption. *Levitt v. Technical Educ. Servs., Inc.*, Civ. A. No. 10-6823, 2012 WL 3205490, at *3 (E.D. Pa. Aug. 7, 2012). The court must construe the exemption narrowly and must construe it against the employer. *Id*. "Specifically, an employer seeking to apply an exemption to the FLSA must prove that the employee and/or employer comes plainly and unmistakably within the exemption's terms." *Id*.

There are few cases applying the most recent version of the outside sales exemption regulations. Herr's urges the Court to rule as the Fifth Circuit of Appeals ruled in *Meza v. Intelligent Mexican Marketing, Inc.*, 720 F.3d 577 (5th Cir. 2013). Meza worked as a route salesman at Intelligent Mexican Marketing, a company that sold and delivered food and beverage items to convenience stores. Prior to working at Intelligent Mexican Marketing, Meza was a self-employed water purification system salesman. The company trained Meza for his new job by having him shadow an experienced salesman for a month. He was paid a weekly salary, plus commissions and bonuses. The job with the defendant required Meza to drive to a number of convenience stores and supermarkets where he would greet the store attendant, inspect the product on the shelves, remove expired products, and make a list of goods that needed to be restocked. Meza would sometimes negotiate with stores to improve the placement of the defendant's products. He would retrieve product from his truck and bring it into the store. Meza also visited prospective customers.

The Intelligent Mexican Marketing's route salesmen were expected to attend weekly hour-long sales training meetings. The defendant also employed warehouse drivers, whose duties included delivering goods to customers. The warehouse drivers did not receive sales commissions and were subject to FLSA's minimum wage and overtime pay requirements. Other than its route salespersons,

the defendant did not employ any other salespersons.

The Fifth Circuit affirmed the district court's grant of summary judgment and concluded that Meza was exempt under the outside sales exemption. The court, applying the factors laid out in the regulations, highlighted a number of factors that favored Intelligent Mexican Marketing, including: (1) route salespersons were the defendant's only salespeople; (2) the defendant employed warehouse drivers who did not make sales; (3) the record lacked evidence that Meza was merely fulfilling the terms of contracts that had been arranged by supervisors or management; (4) the job was advertised as a sales position and Meza had prior sales experience; (5) the company held weekly sales training meetings; and (6) Meza was paid a base salary plus commissions, as well as bonuses for reaching certain sales goals. According to the court, the only factor that favored Meza was the fact that route salespeople did not attend sales conferences.

Jones directs this Court to a ruling from the Sixth Circuit Court of Appeals, *Killion v. KeHE Distributors, LLC*, 761 F.3d 574 (6th Cir. 2014), which held that the district court improperly granted summary judgment to the defendant on the question of FLSA's outside sales exemption. The plaintiffs were sales representatives who worked for the defendant, a distributor of speciality ethnic and health foods. Management assigned the representatives to various locations, and the representatives were required to stock the shelves and reorder merchandise. The customer-development team established the initial relationship with a chain store, and the business-development team and account-management teams negotiated the deals to get the defendant's products in the stores. Account managers also helped stores develop marketing plans that designated shelf space and laid out in-store advertising plans. The plaintiffs served as on-the-ground contacts for each individual store. They oversaw inventory and restocking of shelves, and placed orders when

inventory was depleted.

The defendant selected its sales representatives based on their sales experience, and the plaintiffs thought that their jobs involved sales. Sales representatives cold-called smaller independent retailers and solicited them to buy the defendant's products, though another department was primarily responsible for soliciting such customers. The sales representatives were paid entirely on commission through a variable compensation plan that  for ordering and stocking.

The Sixth Circuit held that the district court was wrong to conclude as a matter of law that the sales representatives made sales. However, even if the plaintiffs engaged in sales, the Sixth Circuit held that the district court was wrong to conclude as a matter of law that sales were the primary duty of the sales representatives. The Sixth Circuit focused on the fact that the vast majority of the plaintiffs' time was spent stocking and cleaning shelves, as well as the plaintiffs' compensation structure, which was largely based on stocking shelves.

The court also concluded that it was error for the district court to refuse to consider the regulation that applied to drivers who sell. The court ordered the district court to "entertain evidence regarding as many of the nine factors identified in [the regulations] as it determines are relevant to this case. And a jury should determine which way these factors tilt."

There are similarities between the facts in *Meza* and the facts here. This Court, however, is not persuaded that *Meza* controls here. A key difference between *Meza* and this case also renders *Meza* distinguishable from this case. The route salespeople, such as Meza, were the only salespeople. That is not the case here, as there were numerous departments responsible for sales of Herr's products. Without question, Herr's route salespersons sold product. But Herr's sales procedures arguably included constraints for certain accounts, including contractual space limitations, and those

constraints may lead a jury to conclude that the heavy lifting with respect to sales was left to other team members, not route salespersons. This Court is persuaded that the Sixth Circuit's *Killion* decision is more apt. Moreover, the law requires that the outside sales exemption to the remedial FLSA is narrowly construed against the employer. This Court therefore concludes that summary judgment is not appropriate.

        **C.**    **Applying the Outside Sales Exemption Factors**

The dispute between the parties is narrow. One of Jones's duties at Herr's was to sell product. The question for this Court is not whether Jones's primary duty was making sales. Rather, the question is whether Jones has raised a genuine issue of material fact as to whether her primary duty as a Herr's route salesperson was making sales. As noted previously, the Court considers the following factors applicable here: a comparison of the driver's duties with those of other employees engaged as truck drivers and as salespersons; the presence or absence of customary or contractual arrangements concerning amounts of products to be delivered; the employer's specifications as to qualifications for hiring; sales training; attendance at sales conferences; method of payment; and the proportion of earnings directly attributable to sales.

The Court has reviewed the record in this case and is mindful that FLSA is a remedial statute whose exemptions must be narrowly construed against the employer. Accordingly, while Herr's has evidence that may convince a fact finder that the outside sales exemption applies to route salespersons, the Court cannot conclude as a matter of law that Jones's primary duty was making sales.

> 1. *Comparison of driver's duties with those of other employees engaged as truck drivers and as salespersons*

Herr's argues that Jones was primarily a salesperson, in part because she was the only Herr's sales contact who called on her customers on a daily basis. The Court is not persuaded because the record shows that other individuals played an important role in the sales of Herr's products. For example, key account managers played a role in sales to new franchised supermarkets and drug stores. (Najmola Dep. at 104.) Herr's notes that the fact that other individuals played a role in selling product does not foreclose a decision that Jones's primary duty was sales. This is true, but the record raises questions as to whether Jones played a smaller role in sales for some larger accounts. If others took the lead on sales for numerous accounts, Jones might be able to successfully argue to a jury that she was not primarily tasked with selling to significant accounts.

> 2. *Presence or absence of customary or contractual arrangements concerning amounts of products to be delivered*

Defendants contend that "there were no pre-determined contracts or customary relationships with [Jones's] customers that required them to regularly purchase certain amounts of Herr's products and that, instead, Jones made sales by building a rapport with her customers, finding new customers, and convincing all customers to buy more and new products." (Herr's Mem. at 25.) Jones points out, however, that for a number of accounts, space in stores was negotiated by key account managers. For certain accounts, a national sales team would make a presentation to the corporate office of a retailer in hopes of selling Herr's products. (Rock Dep. at 115-16.) Members of the key accounts department would make presentations seeking to sell Herr's products at retail outlets. (*Id*. at 118.) Thus, there is at least a factual issue as to how constrained route salespersons were to sell Herr's products to certain customers based on negotiations conducted at a higher level. Moreover, Jones

serviced some of these accounts, thus raising the question whether a significant portion of her job entailed restocking shelves for accounts that had already negotiated how much of Herr's products they would purchase.

### 3. *The employer's specifications as to qualifications for hiring*

Although sales is an important part of the job, Herr's job description includes many other duties that are arguably not related to sales. Moreover, while prior sales experience could be used by a candidate to satisfy the employer's requirement of one or two years of relevant, related experience and/or training, prior retail or customer service experience could also be used to satisfy the employer's requirement. Importantly, prior sales experience was therefore not required for the job. Indeed, Jones's resume is almost entirely devoid of sales experience prior to her job with Herr's. (Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Summ. J. [Pl.'s Opp'n] Ex. B [Jones's Resume].) The parties also dispute the importance placed upon sales ability in the interview process. Defendant has failed to show that this issue conclusively favors it as a matter of law.

### 4. *Sales training and attendance at sales conferences*

Jones does not dispute that she received sales training, but she claims that most of her training consisted of instruction on safety, merchandising, and computer use. (Pl.'s Opp'n at 23.) This is a close question because Herr's clearly trained Jones on how to sell its products. For example, the Route Sales Training Orientation Book offers numerous tips and techniques for route salespersons to improve sales for the company. But, as Jones testified, she was also trained on Herr's products, using a handheld computer, and the proper method for loading her truck.

Similarly, the record reflects that Jones attended quarterly sales meetings. (Jones Dep. at 52-53.) These meetings included discussions of new products, new promotions, and new customers, as

well as safety concerns. (*Id*. at 53; *see also* Pl.'s Opp'n Ex. R [Quarterly Sales Meeting Agendas].) It is not clear, however, whether these quarterly sales meetings qualify as sales conferences. *See Meza*, 720 F.3d at 584 (distinguishing between sales training meetings and sales conferences in deciding that sales conferences factor favored employee).

From the Court's perspective, the sales training factor favors Herr's, but a jury should determine the weight to assign this factor in deciding Jones's primary job duty. A jury must also decide whether Jones attended sales conferences, and if so, what importance to attach to that factor.

5. *Method of payment*

It is undisputed that Jones's pay included a salary as well as commissions. Although Jones points out that at times the commissions she earned were relatively insignificant compared to her guaranteed salary, there is no dispute that her commissions were for her sales. In fact, her commission was based on her gross sales minus promotions, samples, and returns. (Rock Dep. at 43.) This factor clearly favors Herr's.

6. *Proportion of earnings directly attributable to sales*

Herr's notes that Jones "earned substantial commissions and bonuses based on her sales performance." (Def.'s Mem. at 25.) Jones notes that she did not receive commissions on product that was returned by the retailer, and therefore her commissions were actually the result of the retailers' sales, not hers. This argument, while creative, is not persuasive. The commissions she received were for Herr's products that she placed in various retailers. The fact that she might have lost some commissions due to returned product does not mean that she relied on the retailer to ultimately sell the product for her to be rewarded for her sale.

However, it is unclear from the record what qualifies as "substantial commissions and

bonuses" and the Court notes that Jones was guaranteed a weekly salary. It is therefore not appropriate to decide as a matter of law that the proportion of her earnings directly attributable to sales favors applying the outside sales exemption.

## IV. CONCLUSION

Despite Jones's role in selling Herr's products, it is not clear to the Court that Herr's has shown that Jones falls plainly and unmistakably within the outside sales exemption. Therefore, Herr's motion for summary judgment is denied. An Order consistent with this Memorandum will be docketed separately.