**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KALVIN DRUMMOND, MOHAMMED BAH, CHRISTOPHER GRANDISON, and SHANE BENT, on behalf of themselves and those similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>HERR FOODS INC. and JOHN DOES 1-10<br><br>    Defendants. | No. 2:13-05991-BMS |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION**
**FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND CERTIFICATION**
**OF SETTLEMENT CLASS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... iv

INTRODUCTION .......................................................................................... 1

PROCEDURAL HISTORY................................................................................ 3

PROPOSED SETTLEMENT TERMS ................................................................. 4

LEGAL ARGUMENT .................................................................................... 6

    I.    Preliminary approval is appropriate. ........................................................ 6

    II.    The Rule 23 Settlement Class Should Be Provisionally Certified for Purposes of
Settlement. .............................................................................................. 9

        A.    The Proposed Settlement Class Meets the Numerosity Requirement of Rule
23(a)(1)... ......................................................................................... 10

        B.    The Proposed Settlement Class Meets the Commonality Requirement of Rule
23(a)(2). ........................................................................................... 11

        C.    The Proposed Settlement Class Meets the Typicality Requirement of Rule 23(a)(3). 11

        D.    The Proposed Settlement Class Meets the Adequacy Requirement of Rule 23(a)(4). 12

        E.    The Proposed Settlement Class Meets the Predominance and Superiority
Requirements of Rule 23(b)(3). ............................................................ 12

    III.    The FLSA Class Should Be Certified for Settlement Purposes. .................. 14

    IV.    The Court Should Preliminarily Approve the Proposed Settlement Under Rule 23...... 15

    V.    The Court Should Approve the Proposed Settlement Under the FLSA. .......... 18

        A.    The Proposed Settlement is a Fair and Reasonable Resolution of a *Bona Fide*
Dispute. ........................................................................................... 18

            1.    The Parties Have a *Bona Fide* Dispute. ........................................ 19

            2.    The Proposed Settlement is Fair and Reasonable. .............................. 20

        B.    The Settlement is Consistent with Public Policy. ...................................... 21

    VI.    The Service Awards Are Reasonable and Appropriate. ............................... 22

ii

VII.    The Court should preliminarily approve the Class Counsel's fees and costs request.... 23

VIII.    The Court Should Approve the Proposed Form of Notice and the Parties' Notice Plan........ ................................................................................................................... 25

CONCLUSION ............................................................................................................... 26

# TABLE OF AUTHORITIES

## Cases

*Aboud v. City of Wildwood*, 2013 U.S. Dist. LEXIS 70083 (D.N.J. 2013) ................................. 26

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ...................................................... 10

Arpi v. Sternbach Holdings, LLC, 2012 U.S. Dist. LEXIS 183648 (S.D.N.Y. 2012) ................ 26

*Austin v. Pa. Dep't of Corr.*, 876 F. Supp. 1437 (E.D. Pa. 1995).................................................. 17

*Baouch v. Werner Enters.,* 2014 U.S. Dist. LEXIS 64981 (D. Neb. 2014).................................. 16

*Beck v. Maximus, Inc.*, 457 F.3d 291 (3d Cir. Pa. 2006) ........................................................... 12

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980)...................................................................... 23

*Bredbenner v. Liberty Travel, Inc.* 2011 U.S. Dist. LEXIS 38663 (D.N.J. 2011)................ passim

*Bullock v. Administrator of Estate of Kircher*, 84 F.R.D. 1 (D.N.J. 1979).................................. 17

*Campbell v. C.R. Eng., Inc.*, 2015 U.S. Dist. LEXIS 134235 (D. Utah 2015) ............................ 16

*Castagna v. Madison Square Garden, L.P.*, 2011 U.S. Dist. LEXIS 64218 (SDNY 2011) ........ 21

*Cendant Corp. Litigation*, 264 F.3d 201 (3d Cir. 2001) ........................................................ 8, 24

*Chemi v. Champion Mortg.*, 2009 U.S. Dist. LEXIS 44860 (D.N.J. 2009); .............................. 23

*Churchill Village, LLC v. Gen. Elec. Co.*, 361 F.3d 566 (9th Cir. 2004) ...................................... 7

*Clark v. Ecolab,* 2010 U.S. Dist. LEXIS 47036 (S.D.N.Y. 2010)................................................ 20

*Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136 (E.D. Pa. 2000) ............................................... 22

*Curiale v. Lenox Grp.*, 2008 U.S. Dist. LEXIS 92851 (E.D. Pa. 2008) ...................................... 15

*D.R. by MR. v. East Brunswick Bd. of Educ.,* 109 F.3d 896 (3d Cir. 1997) ............................... 22

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001)............................................................ 11

*Dugan v. Towers, Perrin, Forster & Crosby, Inc.*, 2013 U.S. Dist. LEXIS 136305 (E.D. Pa. 2013) ................................................................................................................................ 13, 14

*Ehrheart v. Verizon Wireless*, 609 F.3d 590 (3d Cir. 2010) .................................................. 7, 10

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974).................................................................. 26

iv

*Farris v. J.C. Penney Co.,* 176 F.3d 706 (3d Cir. 1999)......................................................... 18, 22

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975)........................................................................... 7, 15

*Grunin v. International House of Pancakes*, 513 F.2d 114 (8th Cir. 1975) ................................ 26

*Hall v. Best Buy Co.*, 274 F.R.D. 154 (E.D. Pa. 2011) .................................................................... 14

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1988) ............................................................... 7

*In re AT&T Corp.*, 455 F.3d 160 (3d Cir. 2006)........................................................................... 23

*In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164 (S.D.N.Y. 2000).............. 10

*In re Automotive Refinishing Paint Anti-Trust Litigation,* 617 F. Supp. 336 (E.D. Pa. 2007) ..... 26

*In re Cendant Corp. Litig.*, 264 F.3d 201, 256 (3d Cir. 2001)...................................................... 24

*In re Cmty. Bank of N. Va.*, 418 F.3d 277 (3rd Cir. 2005)............................................................ 12

*In re Diet Drugs Prod. Liab. Litig.*, 369 F.3d 293 (3d Cir. 2004) .......................................... 25, 26

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995).......... 15, 24

*In re Imprelis Herbicide Mktg., Sales Practices, & Prods. Liab. Litig.*, 2013 U.S. Dist LEXIS 18332 (E.D. Pa. 2013).............................................................................................................. 15

*In re Ins. Brokerage Antitrust Litig.,* 579 F.3d 241 (3d Cir. 2009)............................................... 23

*In re Janney,* 2009 U.S. Dist. LEXIS 60790 (E.D. Pa. 2009) ...................................................... 23

*In re Prudential Ins. Co. America Sales Practice Litig. Agent*, 148 F.3d 283, 333 (3d Cir. 1998) ................................................................................................................................................. 23

*In re Prudential Ins. Co. of Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283 (3d Cir. 1998) ................................................................................................................. 10, 11, 14, 23

*In re Safety Components, Inc. Sec. Litig.*, 166 F Supp. 2d 72, 102 (D.N.J. 2001) ...................... 24

*In re SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525 (E.D. Pa. 1990)......................... 24

*In re Traffic Executive Ass'n*, 627 F.2d 631 (2d Cir. 1980) .......................................................... 8

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004)........................................ 7, 8

*Jamison v. Butcher & Sherrerd*, 68 F.R.D. 479 (E.D. Pa. 1975)................................................... 17

*Johnston v. HBO Film Mgmt.*, 265 F.3d 178 (3d Cir. 2001) ........................................................ 12

*Keller v. TD Bank*, 2014 U.S. Dist. LEXIS 155889 (E.D. Pa. 2014) ........................................... 16

*LaChance v. Harrington,* 965 F. Supp. 630 (E.D. Pa. 1996) ........................................................ 25

*Lenahan v. Sears, Roebuck & Co.*, 2006 U.S. Dist. LEXIS 60307 (D. NJ. 2006) ....................... 23

*Lenahan v. Sears, Roebuck & Co.,* 2006 U.S. Dist. LEXIS 60307 (D.N.J. 2006) ................ 18, 23

*Lusardi v. Lechner*, 855 F.2d 1062 (3d Cir. 1988) ...................................................................... 14

*Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987) ................................................................ 14

*Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350 (11th Cir. 1982) .................... 18, 19, 20

*Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072 (2d Cir. 1998) ................................. 7

*McGee v. Anne's Choice, Inc.,* 2014 U.S. Dist. LEXIS 75840 (E.D. Pa. 2014) .......................... 16

*Morales v. PepsiCo, Inc.*, 2012 U.S. Dist. LEXIS 35284 (D.N.J. 2012) ...................................... 18

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ............................................ 25

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ................................... 7

*Ripley v. Sunoco, Inc.*, 287 F.R.D. 300 (E.D. Pa. 2012) ....................................................... passim

*Speed Shore Corp. v. Denda*, 605 F.2d 469 (9th Cir. 1979) ......................................................... 7

*Stoneback v. ArtsQuest*, 2013 U.S. Dist. LEXIS 86457 (E.D. Pa. 2013) .................................... 16

*Sullivan v. DB Invs., Inc.*, 667 F.3d 273 (3d Cir. 2011) ....................................................... 10, 13

*v. Champion Mortg.*, 2009 U.S. Dist. LEXIS 44860, (D.N.J. 2009) ........................................... 23

*Wal-Mart Stores v. Dukes*, 131 S. Ct. 2541 (2011) .............................................................. 10, 11

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96 (2d Cir. 2005) ........................................ 7

*Weigner v. City of N.Y.*, 852 F.2d 646 (2d Cir. 1988) ................................................................ 25

*Williams v. Aramark Sports, LLC*, 2011 U.S. Dist. LEXIS 102173 (E.D. Pa. 2011) ............ 12, 14

**Statutes**

29 U.S.C. § 216(b) ........................................................................................................................ 1

**Rules**

Fed. R. Civ. P. 23 (a)(3) ................................................................................................. 11

Fed. R. Civ. P. 23(a)(1) .................................................................................................. 11

Fed. R. Civ. P. 23(a)(4) .................................................................................................. 12

Fed. R. Civ. P. 23(b)(3) .................................................................................................. 13

**Treatises**

Newberg On Class Actions § 11.41 (4th ed. 2002) ................................................... 7, 8

## INTRODUCTION

Subject to this Court's approval, the Parties have reached a preliminary settlement in this hybrid putative class/collective action.[1]  With the assistance of the Honorable Diane M. Welsh (Ret.) at mediation on November 30, 2015, the Parties reached a preliminary settlement wherein Herrs Food, Inc. (hereinafter "Herr's"), while denying any and all liability and disputing the amount of alleged damages, will pay $2,000,000 to settle all claims in this action.  The settlement resolves all claims brought in this action, including allegations that Herr's failed to pay overtime wages in violation of the Fair Labor Standards Act ("FLSA") and state laws.

Named Plaintiff Kalvin Drummond originally filed this action on October 14, 2013.  The lawsuit asserts that: (1) Herr's misclassified its Route Salespersons (hereinafter "RSPs") as exempt from overtime pay under the FLSA and state laws and failed to pay them overtime wages for hours worked over 40 hours in a workweek, and (2) Herr's unlawfully deducted from RSPs' wages for lost inventory.  Herr's denies all allegations set forth in the Fourth Amended Complaint and contends that its RSPs were exempt from overtime under the FLSA and state wage and hour laws and that the deductions made from RSPs' wages were lawful.  Following this Court's conditional certification of the collective action, over 300 individuals filed Consent Forms to become opt-in plaintiffs.

Prior to settlement, the Parties engaged in significant litigation efforts.  Written discovery has been extensive as Defendant has produced over 7,000 pages of documents including but not

---

[1] For purposes of this Memorandum of Law, Plaintiffs incorporate by reference the Definitions contained in the Joint Stipulation and Settlement Agreement ("Settlement Agreement"), a copy of which is attached hereto as Exhibit A.  Defined terms not otherwise defined herein are defined in the Settlement Agreement.

1

limited to: 1) the pay records for all six named Plaintiffs and all of the opt-in Plaintiffs, 2) the personnel files, time data, and sales data for four named Plaintiffs and ten opt-in Plaintiffs, 3) pay and work policies, and 4) orientation and training materials.  In addition, Herr's deposed one named Plaintiff and two opt-in Plaintiffs while Plaintiffs deposed five corporate witnesses, including Herr's corporate representative, and a third party witness.  The Parties also engaged in extensive motion practice, exchanged position statements regarding the exemption and deduction issues, and attended mediation with an experienced mediator, the Honorable Diane M. Welsh (Ret.).

Accordingly, the pending settlement proposal was the result of substantial discovery and motion practice and was the product of adversarial negotiations, which culminated after two years of litigation.  Counsel for the Parties and the Parties themselves have carefully evaluated the risks, time, and costs associated with continuing this litigation.  The settlement proposal ultimately reached does not provide Plaintiffs the equivalent of their best day in court; it clearly, however, provides them substantially more than they would do on their worst day.  It represents a fair compromise to what will otherwise be a long and uncertain path of litigation for both Parties.

While this Court has already conditionally certified a FLSA collective action opt-in class, a Rule 23 class has not been certified to date.  Therefore, Plaintiffs make this unopposed motion: (1) to certify a settlement class under Federal Rule of Civil Procedure 23(b)(3);  (2) for preliminary approval of the settlement with respect to the Rule 23 class claims; and (3) for preliminary approval of the settlement under the FLSA.

In the interest of judicial economy, and because the proposed settlement is fair, reasonable and adequate, Plaintiffs respectfully request that the Court order certification of the settlement class under Rule 23(b)(3) for settlement purposes, appoint undersigned counsel as Class Counsel, and grant preliminary approval of the collective and class settlement, notices, settlement procedure and the parties' Settlement Agreement.[2]

## PROCEDURAL HISTORY

Named Plaintiff Kalvin Drummond originally filed this action on October 14, 2013.  (DE 1).  The Complaint originally included only FLSA and Pennsylvania state law claims.  (*Id.*)  Thereafter, on November 6, 2013, Named Plaintiffs filed an Amended Complaint adding Named Plaintiffs Mohammed Bah, Christopher Grandison, and Shane Bent.  (DE 4).  On November 25, 2013, Herr's filed a Partial Motion to Dismiss Plaintiffs' claim under the Pennsylvania Wage Payment and Collection Law ("PWPCL"), which this Court granted.  (DE 9, 23).  On January 31, 2014, Plaintiffs filed the Second Amended Complaint adding facts to support reinstatement of their claim under the PWPCL.  (DE 25).  On February, 18, 2014, Herr's filed another Motion to Dismiss Plaintiffs' PWPCL claim, which this Court denied.  (DE 29, 33).  On May 30, 2014, Plaintiffs filed the Third Amended Complaint adding unlawful deduction claims under the PWPCL.  (DE 41).

After the first phase of discovery concluded, on June 5, 2014, Herr's filed a Motion for Partial Summary Judgment on the FLSA claims of opt-in Plaintiff Jaqueline Jones, and, on June

---

[2] Although Herr's does not oppose this motion for certification of a settlement class, it expressly reserves the right to defend against any and all of the claims asserted by Plaintiffs including, but not limited to, Rule 23 certification of the state law claims, final certification of the FLSA collective action, liability, and damages, in the event the Court denies the motion to approve the settlement.

16, 2014, Plaintiffs filed a Motion for Conditional Certification.  (DE 42, 47).  Plaintiffs then filed a Motion to Defer Defendant's Motion for Summary Judgment and Permit Discovery pursuant to Rule 56(D), which this Court partially granted.    (DE 51, 60).  After Plaintiffs took additional discovery, Herr's filed its renewed Partial Motion for Summary Judgment, which this Court denied. (DE 61, 75).  On November 10, 2014, Plaintiffs filed their renewed Motion for Conditional Certification, which this Court granted on March 2, 2015.  (DE 77, 95).  During the subsequent notice and opt-in period, over 300 individuals filed consent forms to join this case.

After the opt-in period closed on September 14, 2015, Plaintiffs filed the Fourth Amended Complaint, adding named Plaintiffs Robert Ciampaglia and Stefan Godley and overtime and unlawful deduction claims under New Jersey and Maryland wage and hour laws.  (DE 141). During this time period, the Parties agreed to defer the second phase of opt-in and Rule 23 class discovery until after attending mediation.  In September 2015, the Parties agreed to attend mediation, which was scheduled for November 30, 2015 before Judge Welsh.  During the full-day mediation, the Parties agreed to a settlement.  Plaintiffs now seek preliminary approval of that settlement.

## PROPOSED SETTLEMENT TERMS

In the context of mediation before Judge Welsh, former Magistrate Judge for the United States District Court for the Eastern District of Pennsylvania, the parties agreed to the following settlement terms, which have been embodied in the Settlement Agreement:

1.       Herr's will pay $2,000,000 into a settlement fund to be distributed to individuals (who do not opt out) who have previously filed a consent form to join the case or who complete a

4

Claim Form during the settlement notice period.  The entire $2,000,000 settlement fund will be paid to these individuals on a *pro rata* share based upon the number of workweeks each Claimant worked during the relevant time period; Herr's will not receive any reversion of the settlement fund based on the number of individuals who submit Claim Forms.  The Parties have agreed to a longer than average 90-day notice period in order to promote Class Member participation.

2.      The settlement provides for a full and final release and waiver on a class-wide basis (including individuals who neither submit a Claim Form nor request exclusion) of all state and local wage and hour laws and any other law under which claims based upon the factual allegations in this case could be brought.[3]  The settlement provides for a further full and final release and waiver by every Claimant of all claims under the FLSA that could have been brought based on the factual allegations in the Action. (Settlement Agreement, § XVII).

3.      Each Class Member will receive a notice informing them of their rights and options as they pertain to the settlement. Those Class Members who previously filed a consent form to join the case (over 300 individuals or approximately 30% of the Class) will receive a notice informing them that, *inter allia*: (1) if they wish to receive money they do not have to take any action; (2) if they do nothing and remain eligible to receive payment, they will waive their claims under federal, state, and local wage and hour laws; (3) if they wish not to participate in the settlement and retain their rights under state and local wage and hour laws, they can opt-out of the settlement; and (4) they may object to the settlement.  All other Class Members (those who did not previously file a consent form) will receive a notice informing them that, *inter allia*: (1) if they

---

[3] The release does not release any claim(s) for wrongful discharge under any statute or common law, including but not limited to the FLSA and other federal and state wage and hour laws nor does it waive claims for lost wages due to claims of unlawful termination, demotion, and similar adverse employment actions.

5

wish to receive money through the settlement they must timely submit the Claim Form and thus waive federal, state and local wage/hour claims; (2) if they do nothing, they will receive no money and will also waive their claims under state and local wage and hour laws; (3) if they wish not to participate in the settlement and also retain their rights under state and local wage and hour laws, they can opt-out of the settlement; and (4) they may object to the settlement.

4.      Claimants' Settlement Shares will be a *pro rata* share of the Net Qualified Settlement Fund.  Each Claimant's *pro rata* share will be calculated based on the number of weeks he or she worked as a Route Salesperson or Senior Route Salesperson during the Class Period. (Settlement Agreement, § XV)

5.      Fifty percent (50%) of the total payment to each Class Member shall be deemed wages and allocated to wage claims and the other fifty percent (50%) shall be deemed liquidated damages, interest and other statutory penalties and allocated to all non-wage claims.  (Settlement Agreement, § XV(5)(c)).

6.      The parties will engage a third-party settlement class administrator to administer the notice, allocation, and distribution of the Net Qualified Settlement Fund, whose fees will be paid from the Qualified Settlement Fund. (Settlement Agreement, § II(6)). All costs associated with the settlement, including but not limited to the employer's portion of FICA/FUTA tax withholdings, will be paid from the $2,000,000 settlement fund.

## LEGAL ARGUMENT

**I.   Preliminary approval is appropriate.**

The law favors compromise and settlement of collective and class action suits. *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010); *In re Warfarin Sodium Antitrust Litig.*,

391 F.3d 516, 535 (3d Cir. 2004) ("there is an overriding public interest in settling class action litigation, and it should therefore be encouraged."); *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotations omitted); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("[V]oluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation."); *Speed Shore Corp. v. Denda*, 605 F.2d 469, 473 (9th Cir. 1979) ("It is well recognized that settlement agreements are judicially favored as a matter of sound public policy. Settlement agreements conserve judicial time and limit expensive litigation."); *see also* NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").

The approval of a proposed class action settlement is a matter of discretion for the trial court. *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *Churchill Village, LLC v. Gen. Elec. Co.*, 361 F.3d 566, 575 (9th Cir. 2004); *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1998). In exercising this discretion, courts should give "proper deference to the private consensual decision of the parties." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1988).

Preliminary approval, which is what Plaintiffs seek here, requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties. NEWBERG § 11.25. To grant preliminary approval, the court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *In re Traffic Executive Ass'n*, 627 F.2d 631, 634

7

(2d Cir. 1980); NEWBERG § 11.25 ("If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness . . . and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members).

The court makes an initial determination as to whether there is a presumption of fairness to the settlement. *Warfarin*, 391 F.3d at 535. The Third Circuit has directed district courts "to apply an initial presumption of fairness when reviewing a proposed settlement where: '(1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'" *Id. citing Cendant Corp. Litigation*, 264 F.3d 201, at 232 n. 18 (3d Cir. 2001).

Preliminary approval is the first step in the settlement process. It allows notice to issue to the class and for class members to submit a Claim Form, object to the settlement, or exclude themselves from the settlement. After the notice period, the court will be able to evaluate the settlement with the benefit of the class members' input.

The above standards are easily met here. First, the proposed settlement was reached during arm's length negotiations before the Hon. Diane M. Welsh (Ret.), a former federal Magistrate Judge who has substantial experience in resolving wage and hour matters.

Second, there has been substantial discovery regarding the dispute. The Parties have exchanged information regarding Herr's policies and procedures, training data regarding recorded arrival and departure time of drivers at/to specific locations, data on alleged unlawful deductions, information regarding driver compensation, projections regarding purported hours worked, and position statements regarding the compensability (or lack thereof) of the travel and wait time

asserted as well as the lawfulness of the deductions at issue.  Additionally, dispositive motion practice occurred, permitting further understanding of the strengths and weaknesses of each side's positions.

Third, counsel for the Parties are experienced in employment law and wage and hour litigation.  Plaintiffs' counsel has extensive experience in wage and hour cases.  At the present moment, Plaintiffs' counsel are trial counsel in nine pending federal collectively certified nationwide FLSA matters.  Moreover, Plaintiffs' counsel has been trial counsel in more than 60 wage and hour collective and class actions, which are either pending or have resolved prior to certification.  Defendant is represented by Morgan, Lewis & Bockius LLP, one of the most respected law firms in the nation, and their counsel likewise have substantial experience in wage and hour and employment litigation.  Thus, counsel for the Parties have sufficient experience necessary to fairly evaluate the strengths and weaknesses of this case and to recommend a settlement to the class.

Finally, while this Court will not be able to fully evaluate the extent of any objections until after the settlement has been preliminarily approved and following formal legal notice being sent to class members (*see* Settlement Agreement, Exhibit A), all of the named Plaintiffs have agreed to the settlement.

## II.     The Rule 23 Settlement Class Should Be Certified for Purposes of Settlement.

A settlement class will be certified if it meets the requirements of Rule 23(a) and one of the subsections of Rule 23(b).  *See, e.g., Wal-Mart Stores v. Dukes*, 131 S. Ct. 2541, 2548 (2011); *In re Prudential Ins. Co. of Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 309 (3d Cir. 1998); *In re Imprelis Herbicide Mktg., Sales Practices & Prods. Liab. Litig.*, 2013 U.S. Dist.

LEXIS 149323, at *9-10 (E.D. Pa. 2013); *Ripley v. Sunoco, Inc.*, 287 F.R.D. 300, 306 (E.D. Pa. 2012).   Rule 23(e) requires Court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable and adequate.  Fed. R. Civ. P. 23.  Notably, a class may be approved for settlement purposes under less stringent requirements as would be required if a trial was necessary.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273 (3d Cir. 2011).  Here, the parties' Rule 23 settlement class should be certified for purposes of settlement.

By reaching a favorable settlement prior to dispositive motions or trial, the parties seek to avoid significant expense and delay, and instead ensure recovery for the class. *Ehrheart,* 609 F.3d at 594-595 (3d Cir. 2010) ("[T]he parties may also gain significantly from avoiding the costs and risks of a lengthy and complex trial."); *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ("Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them.").

### A.  The Proposed Settlement Class Meets the Numerosity Requirement of Rule 23(a)(1).

Rule 23(a)(1) requires the class to be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  Courts in the Third Circuit typically hold that a putative class of about 40 is sufficient to meet this requirement.  *E.g., Ripley*, 287 F.R.D. at 307. Since Herr's has identified over 1,000 putative class members, Plaintiffs assert that the numerosity requirement is satisfied.

### B.  The Proposed Settlement Class Meets the Commonality Requirement of Rule 23(a)(2).

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2). Here, Plaintiffs assert that they can establish "commonality", because, "while each Plaintiff's recovery might be different due to the number of hours that he or she worked without proper compensation, the wrong was from Defendant's alleged common [] policies that precluded proper compensation for overtime work." *Ripley*, 287 F.R.D. at 308 (relying on *Dukes*, 131 S. Ct. at 2551).

### C.  The Proposed Settlement Class Meets the Typicality Requirement of Rule 23(a)(3).

Rule 23(a)(3) requires that "the claims and defenses of the representative parties" be "typical of the claims or defenses of the class."  Fed. R. Civ. P. 23 (a)(3).  The "typicality" requirement is "designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." *Prudential*, 148 F.3d at 311.  The cause of the injury claimed on behalf of the class must be a result of some alleged "common wrong."  *Id.* at 312.  Here, the Plaintiffs' claims are all based on Herr's' alleged misclassification of them as exempt employees, which resulted in Herr's failing to pay them overtime wages, and Herr's alleged unlawful deductions from their wages.  Plaintiffs thus assert that their claims are typical of the class they represent. *See, e.g., Williams v. Aramark Sports, LLC*, 2011 U.S. Dist. LEXIS 102173, *10 (E.D. Pa. 2011) (finding typicality where named plaintiff "was paid under the same payroll policies as the rest of the Class Members, and those payroll policies form the basis of the Complaints in these cases").

11

### D. The Proposed Settlement Class Meets the Adequacy Requirement of Rule 23(a)(4).

Rule 23(a)(4) requires "the representative parties" to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy requirement "encompasses two distinct inquiries [1] whether the named plaintiffs' interests are sufficiently aligned with the absentees, and [2] [whether] it tests the qualifications of counsel to represent the class." *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 303 (3rd Cir. 2005) (internal quotation marks omitted). *Accord, e.g., Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir. Pa. 2006); *Johnston v. HBO Film Mgmt.*, 265 F.3d 178, 185 (3d Cir. 2001); *Ripley*, 287 F.R.D. at 309. Here, the harm allegedly suffered by the Named Plaintiffs – Herr's' alleged misclassification of RSPs as exempt employees, which resulted in Herr's' failing to pay them overtime wages, and Herr's' alleged unlawful deductions from their wages – is aligned with the harm allegedly suffered by the putative class members; and (2) Named Plaintiffs' counsel is highly qualified employment law counsel experienced in FLSA and wage and hour litigation. (Swidler Declaration).

### E. The Proposed Settlement Class Meets the Predominance and Superiority Requirements of Rule 23(b)(3).

Once the requirements of Rule 23(a) are satisfied, a class may be certified under Rule 23(b)(3) if "the court finds that the questions of law or fact common to class members *predominate* over any questions affecting only individual members" (the "predominance" requirement), and "that a class action is *superior* to other available methods for fairly and efficiently adjudicating the controversy" (the "superiority" requirement). Fed. R. Civ. P. 23(b)(3) (emphasis added). "The matters pertinent to these findings include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

12

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action."  *Id.*

"[T]he focus of the predominance inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct."  *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 297 (3d Cir. 2011) (en banc). *Accord, e.g., In re Imprelis Herbicide Mktg., Sales Practices & Prods. Liab. Litig.*, 2013 U.S. Dist. LEXIS 149323, at *18 (E.D. Pa. Oct. 17, 2013).  Here, the claims that Herr's misclassified named Plaintiffs as exempt employees, failed to pay them overtime wages, and unlawfully deducted from their wages are common issues that Plaintiffs assert predominate over any hypothetical individual issues.  *See e.g., Ripley*, 287 F.R.D. at 309; *Dugan v. Towers, Perrin, Forster & Crosby, Inc.*, 2013 U.S. Dist. LEXIS 136305, *11 (E.D. Pa. 2013).

"The superiority requirement asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *Prudential*, 148 F.3d at 316 (internal quotation marks omitted).  *Accord, e.g., Imprelis*, 2013 U.S. Dist. LEXIS 149323, at *19; *Ripley*, 287 F.R.D. at 310.  Here, Plaintiffs assert that class-wide resolution of this matter is superior to individual claims, because the amount of the claims of most class members is comparatively small, whereas the size of the class is quite large.  Furthermore, the manageability of a class action – a component of the superiority inquiry – is a less important consideration when certification is sought of a settlement class.  *See, e.g., Dugan*, 2013 U.S. Dist. LEXIS 136305, at *11.

**III.      The FLSA Class Should Be Given Final Certification for Settlement Purposes.**

This Court has found that satisfying the more stringent requirements of Rule 23 qualifies the class to be certified as a collective action.  *Hall v. Best Buy Co.*, 274 F.R.D. 154, 167 n.68 (E.D. Pa. 2011).  Courts in the Third Circuit apply the so-called "*Lusardi* factors" to certification of an FLSA opt-in class.  These factors are: "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to [defendants] which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations."  *Bredbenner v. Liberty Travel, Inc.*, 2011 U.S. Dist. LEXIS 38663, at *48 (D.N.J. 2011) (quoting *Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 359 (D.N.J. 1987), *vacated in part sub nom. Lusardi v. Lechner*, 855 F.2d 1062 (3d Cir. 1988).  *Accord Williams*, 2011 U.S. Dist. LEXIS 102173, at *28.  "Because the analysis required for final certification largely overlaps with class certification analysis under Federal Rule of Civil Procedure 23(a), the Court need only address the *Lusardi* factors in passing"; "there is little difference between the two approaches."  *Bredbenner*, 2011 U.S. Dist. LEXIS 38663, at *49 (internal quotation marks & brackets omitted).

As discussed above, Plaintiffs assert that they have satisfied the Rule 23 requirements for class certification.  Thus, for the same reasons, Plaintiffs assert that they have also met the requirements of final certification for a collective action pursuant to the FLSA.   Procedural and fairness considerations will also meet due process requirements; all potential class members will receive a notice informing them that they are members of the class and will be able to opt-in to the litigation by simply signing and returning the Claim Form.

14

**IV.    The Court Should Preliminarily Approve the Proposed Settlement Under Rule 23.**

In deciding a motion for preliminary approval of a Rule 23 class action settlement, a court considers whether: (1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected. *E.g., In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995); *In re Imprelis Herbicide Mktg., Sales Practices, & Prods. Liab. Litig.*, 2013 U.S. Dist. LEXIS 18332, at *7 (E.D. Pa. 2013); *Curiale v. Lenox Grp.*, 2008 U.S. Dist. LEXIS 92851, at *26 (E.D. Pa. 2008).[4]  The presence of these factors "establishes an initial presumption of fairness." *GMC*, 55 F.3d at 785.  *Accord, e.g., Imprelis*, 2013 U.S. Dist. LEXIS, 18332, at *8.  All of these factors are present here.

First, there is no question that the settlement negotiations here occurred at arm's length. Indeed, after two years of highly contested litigation the Parties attended a formal mediation on November 30, 2015 before the Hon. Diane M. Welsh (Ret.), an impartial former Magistrate Judge with impeccable credentials, who has presided over thousands of settlements and is highly regarded as a mediator.  (Swidler Declaration)  *See* http://www.jamsadr.com/welsh/.

Second, there has been an extensive exchange of information between the Parties during discovery and in anticipation of mediation.  (Swidler Declaration).  For example, Herr's produced pay records for all six named Plaintiffs and all opt-in Plaintiffs, the personnel files and time and

---

[4] The Third Circuit has adopted a more rigorous nine-factor test for final approval of class action settlements.  *GMC*, 55 F.3d at 785 (*citing Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)). However, "the standard for preliminary approval is far less demanding." *Curiale*, 2008 U.S. Dist. LEXIS 92851, at *27, n.4 (internal quotation marks omitted).

sales records for four named Plaintiffs and ten opt-in Plaintiffs, pay and work policies, and orientation and training materials.

Third, counsel for Plaintiffs have considerable experience and success in prosecuting, defending, and settling wage and hour claims, including Rule 23 class actions and FLSA collective actions. (Swidler Declaration); *see also McGee v. Anne's Choice, Inc.,* 2014 U.S. Dist. LEXIS 75840 (E.D. Pa. 2014) (Schiller, J) (finding Mr. Swidler to be "well-versed in FLSA cases and skilled in litigating and settling wage-and-hour litigation"); *Keller v. TD Bank*, 2014 U.S. Dist. LEXIS 155889, 18-19 (E.D. Pa. 2014) (Restrepo, J.) (finding that Mr. Swidler and Mr. Swartz "have considerable experience handling class and collective action disputes" and "have represented the Named Plaintiffs and the prospective class competently and diligently throughout the course of this litigation"); *Stoneback v. ArtsQuest*, 2013 U.S. Dist. LEXIS 86457 (E.D. Pa. 2013) (Gardner, J.) (finding that Mr. Swidler has "handled numerous class action lawsuits" and "is qualified to represent the class as class counsel"); *Campbell v. C.R. Eng., Inc.*, 2015 U.S. Dist. LEXIS 134235, *18 (D. Utah 2015) (finding that Swartz Swidler LLC, Mr. Swidler and Mr. Swartz "ha[ve] significant experience in litigating wage and hour cases"); *Baouch v. Werner Enters.,* 2014 U.S. Dist. LEXIS 64981, *9 (D. Neb. 2014) (finding that Swartz Swidler, LLC, Justin Swidler, and Richard Swartz have "experience in class actions [and] knowledge of the law" in an FLSA and state law minimum wage case).

The recommendation of settlement by such experienced counsel is entitled to significant weight.  *See, e.g., Austin v. Pa. Dep't of Corr.*, 876 F. Supp. 1437, 1472 (E.D. Pa. 1995) ("in determining the fairness of a proposed settlement, the court should attribute significant weight to the belief of experienced counsel that settlement is in the best interest of the class"); *Bullock v.*

16

*Administrator of Estate of Kircher*, 84 F.R.D. 1, 4 (D.N.J. 1979) *citing Jamison v. Butcher & Sherrerd*, 68 F.R.D. 479, 481-82 (E.D. Pa. 1975) (Counsel is "intimately associated with the litigation and consequently far more able to weigh its relative strengths and weaknesses").

Fourth, there have thus far been no objections to the proposed settlement, though, candidly, that is presumably because notice has not yet been sent to putative class members; that awaits the Court's certification of a settlement class, as discussed above, and approval of the form of notice, as discussed below.  It is important to note that each named Plaintiff has expressed his acceptance of the settlement.

Finally, counsel for the Parties have determined that this case presents significant risks for all sides.  In light of the uncertainties and costs associated with protracted litigation, Herr's has agreed to settle this claim for a fair and appropriate amount - $2,000,000.  The settlement amount represents a fair value of the attendant risks of litigation, even though recovery could be greater if this case were won at trial and survived through appeal. Herr's and its counsel believe this settlement amount is reasonable, especially in light of the numerous defenses asserted. If Herr's prevailed in its substantive and procedural defenses (e.g., the exempt status of RSPs, lawfulness of deductions, lack of similarity among class members, etc.), Plaintiffs and the putative class would not recover anything.   Nevertheless, it is well-settled that a settlement of a class action may be appropriate even where the settlement is only a fraction of the ultimate total exposure should the case be decided at trial.  *See Lenahan v. Sears, Roebuck & Co.,* 2006 U.S. Dist. LEXIS 60307, at *48 (D.N.J. 2006) (approving $15 million settlement when maximum exposure at trial may have been as high as $104 million because of the uncertainty of the final disposition of a trial).

Plaintiffs' asserted damages in this case resulted from Plaintiffs' claims that Herr's failed to pay Plaintiffs overtime wages and unlawfully deducted for the cost of lost inventory from Plaintiffs' wages. As to Plaintiffs' overtime claims, the Parties dispute how many hours each RSP worked per workweek and the method of calculating owed overtime wage damages. Plaintiffs argue that RSPs worked an average of 55 hours per workweek, while Herr's contends that they worked far fewer hours per workweek. Moreover, Plaintiffs argue that they would be entitled to a 150% premium for hours worked in excess of 40 hours in a workweek, while Herr's contends that Plaintiffs would be entitled to only a 50% premium. Should Herr's prevail on these issues, the amount owed to each class member would be dramatically reduced.

## V.   The Court Should Approve the Proposed Settlement Under the FLSA.

The decision to approve the settlement of an FLSA collective action lies within the trial court's discretion. *Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1354 (11th Cir. 1982). In exercising that discretion, the court should be mindful of the strong presumption in favor of settlement. *E.g., Farris v. J.C. Penney Co.,* 176 F.3d 706, 711 (3d Cir. 1999); *Morales v. PepsiCo, Inc.*, 2012 U.S. Dist. LEXIS 35284, at *3 (D.N.J. 2012).

### A.  The Proposed Settlement is a Fair and Reasonable Resolution of a *Bona Fide* Dispute.

"To approve a settlement resolving claims under the FLSA, the Court must scrutinize its terms for fairness and determine that it resolves a bona fide dispute." *Bredbenner,* 2011 U.S. Dist. LEXIS 38663, at *50 (citing *Lynn's,* 679 F.2d at 1354). Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate guarantor of fairness. *Lynn's,* 679 F.2d at 1353-54; *Bredbenner,* 2011 U.S. Dist. LEXIS 38663, at *51. If the proposed settlement reflects a

18

"reasonable compromise of disputed issues," the court should approve the settlement. *Lynn's*, 679

F.2d at 1354. *Accord Bredbenner*, 2011 U.S. Dist. LEXIS 38663, at *52.

   **1. The Parties Have a *Bona Fide* Dispute.**

  The Parties' agreement settles several disputed legal and factual issues.  Named Plaintiffs

filed the action claiming that Herr's misclassified RSPs as exempt from overtime wages under the

FLSA and state laws, failed to pay one and one-half times the regular rate for all hours that RSPs

worked in excess of 40 hours per workweek, and that Herr's unlawfully deducted from RSPs'

wages.  At all times, Herr's disputed its liability on these claims, asserted a number of substantive

and procedural defenses to liability and, even assuming its liability, maintained that damagers were

far less than the amounts asserted by named Plaintiffs.  Herr's' defenses include that:

- Plaintiffs and putative class members were exempt from the overtime provisions of the FLSA and state wage and hour laws under the "outside sales" exemption;

- Plaintiffs and putative class members were exempt from the overtime provisions of the FLSA and state wage and hour laws under the "motor carrier" exemption;

- Plaintiffs and putative class members were exempt from the overtime provisions of the FLSA and state wage and hour laws under the "administrative" exemption;

- Plaintiffs and putative class members were exempt from the overtime provisions of the FLSA and/or state wage and hour laws under the "highly compensated" exemption;

- Plaintiffs and putative class members were exempt from the overtime provisions of the FLSA and state wage and hour laws under a combination exemption;

- Proving that Plaintiffs were nonexempt under any given exemption would necessitate individual testimony from each and every RSP, which is inconsistent with final certification of the FLSA class and Rule 23 certification of state law classes;

- Proving Plaintiffs worked over 40 hours in any given workweek would necessitate individual testimony from each and every RSP, which is inconsistent with final certification of an FLSA class and Rule 23 certification of state law classes;

- The deductions from Plaintiffs' wages were lawful under state laws;

- Plaintiffs and the putative class failed to satisfy the requirements of 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 for certification (final, or otherwise);

- Herr's is not liable for liquidated damages under the "good faith' defense; and

- Plaintiffs' claims were barred, at least in part, by the various applicable statutes of limitations.

Thus, there are *bona fide* disputes between the Parties that were resolved through the arm's length mediated settlement. *Bredbenner,* 2011 U.S. Dist. LEXIS 38663, at *50-52.

### 2. The Proposed Settlement is Fair and Reasonable.

The terms of the proposed settlement are fair. As noted above, courts look to the adversarial nature of a case as an indicator of the fairness of the settlement. *Lynn's,* 679 F.2d at 1353-54; *Bredbenner,* 2011 U.S. Dist. LEXIS 38663, at *50-51; *Clark v. Ecolab,* 2010 U.S. Dist. LEXIS 47036, at *24 (S.D.N.Y. 2010). The Parties' settlement negotiations also demonstrate fairness. Former Magistrate Judge Welsh, an experienced, independent mediator, oversaw the negotiations at the November 30, 2015 mediation, which "virtually insures that the negotiations were conducted at arm's length and without collusion between the parties." *Bredbenner,* 2011 U.S. Dist. LEXIS 38663, at *30. *Accord, e.g., Castagna v. Madison Square Garden, L.P.*, 2011 U.S. Dist. LEXIS 64218, at *14 (SDNY 2011).

The settlement here carries other indicia of fairness. Throughout the process, Plaintiffs were represented by competent counsel experienced in wage-and-hour class litigation. (Swidler

20

Declaration).  Furthermore, the settlement was consummated after extensive litigation, which included the production of time, payroll, and sales data and a full and fair exchange of information between the parties through both formal discovery and in anticipation of mediation, so that the parties were fully informed of the legal issues and evidence.  The settlement further occurred after the Court's decision denying summary judgment to Defendant.  Under the proposed settlement, Plaintiffs receive payment of estimated alleged unpaid wages, including, but not limited to, damages related to purported unlawful deductions, unpaid overtime plus a component for liquidated damages, as well as attorneys' fees, costs, and service payments to class representatives. Significantly, named Plaintiffs, opt-in Plaintiffs, those putative class members who submit claim forms will receive that money promptly, avoiding the risks and delay inherent in continued litigation.  These factors clearly establish fairness. *Bredbenner,* 2011 U.S. Dist. LEXIS 38663, at *29-30 & 50-52.

### B.  The Settlement is Consistent with Public Policy.

Like other jurisdictions, the Third Circuit recognizes a strong public policy in favor of settlements, since "they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by courts."  *D.R. by MR. v. East Brunswick Bd. of Educ.,* 109 F.3d 896, 901 (3d Cir. 1997).  The settlement here is consistent with that policy because it resolves a pending case on behalf of a potential class of more than 1,000 members and avoids a jury trial and likely appeals.  Because the settlement represents a fair settlement of a *bona fide* dispute, public policy heavily weighs in favor of approval.  *Id. See also Farris,* 176 F.3d at 711.

21

**VI.     The Service Awards Are Reasonable and Appropriate.**

Service awards are the norm in wage-and-hour class litigation.  *Bredbenner,* 2011 U.S.
Dist. LEXIS 38663, at *64.  Their purpose is to compensate representative plaintiffs "for the
services they provided and the risks they incurred during the course of the litigation."  *Cullen v.
Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000).  The named Plaintiffs here took risks
as both Rule 23 and FLSA class representatives.  Their services began with their filing of a hybrid
collective/class action that provides a large group of Herr's employees with the opportunity to
recover a portion of their allegedly unpaid compensation.  Throughout the litigation, the named
Plaintiffs provided information and documents to assist counsel's investigation and litigation of
their claims.  Opt-in Plaintiffs Christopher Spross and Jaqueline Jones also spent a considerable
amount of time assisting the Class during the litigation of this matter.  Herr's deposed them both
and filed the Motion for Summary Judgment on opt-in Plaintiff Jones' FLSA claims.  Opt-in
Plaintiff Jones greatly assisted the Class by helping counsel defeat Herr's motion for partial
summary judgment.  The Class Representative Payments are well within the accepted range in this
District: Named Plaintiff Drummond will receive $7,500, Named Plaintiffs Bah, Bent, and
Grandison with each receive $5,000, Named Plaintiffs Ciampaglia and Godley will each receive
$1,500, and Opt-in Plaintiffs Jaqueline Jones will receive $5,000, and Opt-in Plaintiff Christopher
Spross will receive $500.  Numerous courts in this District have awarded service awards equal to
or higher than those proposed here.  *See e.g., In re Ins. Brokerage Antitrust Litig.,* 579 F.3d 241,
282, 284 (3d Cir. 2009) ($10,000 service award); *In re Janney,* 2009 U.S. Dist. LEXIS 60790, at
*37 (E.D. Pa. 2009) ($20,000 service payment in FLSA and Pennsylvania wage and hour case);
*Bredbenner,* 2011 U.S. Dist. LEXIS 38663, at *68 ($10,000).

**VII.** **The Court should preliminarily approve the Class Counsel's fees and costs request.**

The final decision regarding the reasonableness of class counsel's fees and costs should be made during the Final Approval Hearing, following notice to class members and the objection period. The reasonableness of such fees and costs are better evaluated after such period, as this Court will be made aware of any objections by then and as class counsel will spend a substantial amount of additional time and effort working on this matter from the date of the instant motion through the date of the Final Approval Hearing.

However, it is worth noting that the attorney's fees and costs in this matter are requested as a percentage of the settlement, which is the favored method for calculating attorney's fees in such cases. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478-79 (1980); *In re AT&T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006); *In re Prudential Ins. Co. America Sales Practice Litig. Agent*, 148 F.3d 283, 333 (3d Cir. 1998); *Court Awarded Attorney Fees, Report of Third Circuit Task Force*, 108 F.R.D. 237 (1985); *Bredbenner*, 2011 U.S. Dist. LEXIS 38663 at *52-53 (D. NJ. 2011) (common fund distribution for attorney's fees in hybrid FLSA/Rule 23 wage and hour case). The percentage-of-recovery method "is the prevailing methodology used by courts in this Circuit for wage-and-hour cases." *Id.* at *53, *citing, Chemi v. Champion Mortg.*, 2009 U.S. Dist. LEXIS 44860 (D.N.J. 2009); *In re Janney*, 2009 U.S. Dist. LEXIS 60790; *Lenahan v. Sears, Roebuck & Co.*, 2006 U.S. Dist. LEXIS 60307 (D. NJ. 2006).

Even in cases where statutory attorney's fees attach, such as in FLSA cases, the percentage-of-recovery doctrine is still the preferred manner to calculate attorney's fees. The lodestar method, whereby the attorney's time is multiplied by the reasonable hourly rate, remains *disfavored*, because "regardless [of] how a total settlement structure is formally structured . . . every dollar

given to class counsel means one less dollar for the class." *In re Cendant Corp. Litig.*, 264 F.3d 201, 256 (3d Cir. 2001); *see also In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d at 821-822 (rejecting lodestar fee and directing that percentage-of-recovery should have been utilized even though the agreement for fees was ostensibly distinct from the agreement to pay class members because of "economic reality" of such arrangement).

In common fund cases, fee awards generally range anywhere from nineteen percent (19%) to forty-five percent (45%) of the settlement fund. *See In re Gen. Motors*, 55 F.3d at 822, *citing In re SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 533 (E.D. Pa. 1990). Here, class counsel has requested a fee of thirty-three and one-third percent (33 1/3%) of the settlement fund, totaling $666,666.66. This percentage is in line with what is routinely provided in such cases. *See, e.g. Bredbenner*, 2011 U.S. Dist. LEXIS 38663 at *60-61 (awarding 32.6% of $3 million, or $978,000, *plus costs,* in wage and hour case where counsel spent 1,800 hours litigating claim, and citing to cases providing same); *In re Safety Components, Inc. Sec. Litig.*, 166 F Supp. 2d 72, 102 (D.N.J. 2001) (granting award of 33 1/3 % in common fund case and citing to ten cases from this Circuit holding the same). It is important to note that the notice sent to the Class after this Court conditionally certified the collective action stated that Plaintiffs' counsel would apple to receive 1/3 of any settlement obtained.

Class Counsel has requested a fee award of 33 1/3% of the Settlement Fund. Hence, while counsel will further substantiate this request prior to the Final Settlement Hearing (after any objections will be known), an initial determination that the fee request is fair is appropriate.

24

VIII.    **The Court Should Approve the Proposed Form of Notice and the Parties' Notice Plan.**

To satisfy due process, notice to class members must be "reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *LaChance v. Harrington,* 965 F. Supp. 630, 636 (E.D. Pa. 1996) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). The form of notice must be sufficient to accomplish this purpose in accordance with the dictates of Fed. R. Civ. P. 23(c)(2) and 23(e). Furthermore, "[a]lthough the notice need not be unduly specific . . . the notice document must describe, in detail, the nature of the proposed settlement, the circumstances justifying it, and the consequences of accepting and opting out of it." *In re Diet Drugs Prod. Liab. Litig.*, 369 F.3d 293, 308-10 (3d Cir. 2004) (internal quotations omitted); *accord Weigner v. City of N.Y.*, 852 F.2d 646, 649 (2d Cir. 1988).

Here, the form and method of the notice of the Parties' proposed settlement satisfies all due process considerations and meets the requirements of the Federal Rules of Civil Procedure. In particular, the Class Notice (*see* Settlement Agreement, Exhibit A), provides detailed information about the settlement terms (including the formula used to calculate Claimants' Settlement Share). It also sets forth class counsel's intent to request attorneys' fees, reimbursement of expenses, and Class Representative Payments for the named Plaintiffs and opt-in Plaintiffs Spross and Jones and detailed information about the claims being released. In addition, the Class Notice provides information about the date for the Fairness Hearing, class members' rights to object (and deadlines and procedures for objecting) or exclude themselves, and the procedure to receive additional information. Further, the Class Notice provides potential class members with contact information for the claims administrator and class counsel. Likewise, the Claim Form

25

meets all of the due process standards; it is written in plain English, is user friendly and describes exactly what each class member must do to receive a settlement payment.  *In re Automotive Refinishing Paint Anti-Trust Litigation,* 617 F. Supp. 336, 345-46 (E.D. Pa. 2007).

Finally, the proposed notice procedure, including individualized mailing, procedural safeguards such as skip tracing for returned notices, and a reminder notice (Settlement Agreement, § VIII) has been recognized as the best notice that practicably can be given to absent class members.  *See, e.g., Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175 (1974); *Lawson v. AT&T Mobility, LLC* 687 F.3d 109, 123-24 (3d Cir. 2012); *In re Diet Drugs,* 369 F.3d at 308-310; *Grunin v. International House of Pancakes*, 513 F.2d 114, 121-22 (8th Cir. 1975).  The ninety (90) day return deadline, with extra time built in for a second mailing likewise is generally acceptable.  *See, e.g., Aboud v. City of Wildwood*, 2013 U.S. Dist. LEXIS 70083, at *23 (D.N.J. 2013) ("The court finds that a 45-day opt-in period is appropriate here"); Arpi v. Sternbach Holdings, LLC, 2012 U.S. Dist. LEXIS 183648, at *4 (S.D.N.Y. Dec. 10, 2012) (45 days).  Accordingly, the form of Notice and proposed notice and claim process satisfy both due process and the requirements of Rule 23 and should be approved.

## CONCLUSION

Plaintiffs respectfully request that this Court grant their Motion: (1) to certify a settlement class under Federal Rule of Civil Procedure 23(b)(3) for settlement purposes only; (2) to certify an FLSA collective action opt-in settlement class under 29 U.S.C. §216(b), for settlement purposes only; (3) for preliminary approval of the settlement as embodied in the attached Settlement Agreement with respect to the Rule 23 class claims; (4) for preliminary approval of the settlement as embodied in the attached Settlement Agreement with respect to FLSA collective action claims;

26

and (5) to approve the proposed form of notice and the Parties' notice plan.

Respectfully submitted,

/s/ Matthew Miller
Matthew D. Miller, Esq.
Joshua S. Boyette, Esq.
Justin L. Swidler, Esq.
**SWARTZ SWIDLER, LLC**
1101 Kings Highway North, Ste. 402
Cherry Hill, NJ 08034
Phone: (856) 685-7420
Fax: (856) 685-7417

March 29, 2016